IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CANDACE FRIESEN, Individually and as Representative of the Estate of Ladell Friesen and as Next Friend of her Minor Daughter Abigail Ladell Friesen; STAN FRIESEN; LOIS FRIESEN,<br><br>Plaintiffs,<br><br>vs.<br><br>ACE DORAN HAULING & RIGGING, INC.; and DOES 1-25,<br><br>Defendants. | CV 12–134–M–DLC<br><br>ORDER |

This order resolves two interrelated motions in this case: (1) Defendant Ace Doran Hauling and Rigging Co.'s motion for summary judgment on Abigail Friesen, Stan Friesen, and Lois Friesen's claims (Doc. 38.); and (2) Defendant Ace Doran's motion to strike inadmissible evidence (Doc. 71).

For the reasons articulated below, Defendant's motion for summary judgment will be granted in part and denied in part, and Defendant's motion to strike will be denied as moot.

1

# I. FACTS

This matter arises out of a motor vehicle accident that occurred on U.S. Route 2 in Montana on or about February 22, 2011. Ladell Friesen died as a result of that accident. At the time of his death, Ladell Friesen was married to Candace Friesen, who was also in the vehicle, and who was pregnant with their only child, Abigail Friesen. Ladell Friesen was the adult son of Stan and Lois Friesen. Ladell died intestate, and Candace Friesen is the personal representative of Ladell Friesen's estate.

Plaintiffs third amended complaint (Doc. 76) brings numerous claims against the Defendants. The scope of the motions addressed in this order are limited to Plaintiff's "Seventh Cause of Action - Wrongful Death and Survival Cause of Action Damages," which states:

> Candace Friesen has been appointed the personal representative of the Estate of Ladell Friesen. Candace Friesen therefore asserts on behalf of the Estate of Ladell Friesen, as well as the heirs of Ladell Friesen including Candace Friesen, [and] Ladell Friesen's minor daughter, Abigail Ladell Friesen, a cause of action for the wrongful death of Ladell Friesen seeking all elements of damages permitted under Montana law pursuant to MCA 27-1-323, MCA 27-1-513 and MCA 27-1-501 and all other applicable statutes as well as the common law of Montana. Further, Candace Friesen, individually and as next friend of her minor daughter, Abigail Ladell Friesen, Stan Friesen and Lois Friesen all seek wrongful death damages in their

individual capacity. The wrongful death of Ladell Friesen
was proximately caused by the negligence, negligence per
se and gross negligence of Ace Doran and the negligence
and negligence per se of Coles[1]. Further, Stan and Lois
Friesen would say and show that they had an unusually
close and interdependent relationship with their son Ladell,
including financial dependency as described above and
therefore are entitled to recover for loss of consortium as a
result of the death of their son, Ladell Friesen, in addition
to the grief, sorrow, mental anguish and anxiety that they
suffered as a result of their son's death.

(Doc. 76 at 26-27.)

The Court's jurisdiction over this matter is based on diversity of citizenship under 28 U.S.C. § 1332. "The source of substantive rights enforced by a federal court under diversity jurisdiction . . . is the law of the States." *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 112 (1945).

## II. MOTION FOR SUMMARY JUDGMENT

Ace Doran filed a motion for summary judgment on Abigail Friesen, Stan Friesen, and Lois Friesen's claims. (Doc. 38.) Plaintiffs opposed the motion. (Doc. 54.) Ace Doran moves for summary judgment on three points: (1) Abigail, Stan, and Lois Friesen lack standing to assert a wrongful death claim as a matter of law, since Candace Friesen is the personal representative of Ladell Friesen's estate, and

---

[1] Issac Saunders Coles has been dismissed without prejudice from this matter. (Doc. 105.)

thus the only party entitled to assert such a claim; (2) Abigail, Stan, and Lois Friesen are not entitled to wrongful death damages as a matter of law; and (3) Stan and Lois Friesen's claims should be dismissed as a matter of law because they cannot establish significant evidence of an extraordinarily close and interdependent relationship between them and their adult son that would justify an award of loss of consortium damages. (Doc. 40 at 2-3.)

Summary judgment is proper if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine

issue for trial." *Id.* at 248 (internal quotation marks omitted).

**A. Abigail, Lois, and Stan Friesen do not have standing to bring a wrongful death claim.**

Ace Doran argues that Candace Friesen, as the personal representative of the Estate of Ladell Friesen, is the only person that has standing to bring a wrongful death action for Ladell's death. Thus, Ace Doran asserts that Abigail, Stan, and Lois Friesen's claims should be dismissed.

"When injuries to and the death of one person are caused by the wrongful act or neglect of another, the personal representative of the decedent's estate may maintain an action for damages against the person causing the death . . . ." MCA § 27-1-513 (2011). The Montana Supreme Court has interpreted this statute to mean "that only one wrongful death action arising out of an adult's wrongful death may be brought and the decedent's personal representative is the only person who may bring such an action." *Renville v. Fredrickson*, 101 P.3d 773, 777 (Mont. 2004). The law is clear on this point, and Plaintiffs concede that "[i]t is true that only Candace Friesen as personal representative of the estate can litigate the claims of the other plaintiffs" (Doc. 54 at 6). Thus, Ace Doran's motion for summary judgment will be granted on this point. All Defendants' claims must be brought and litigated by Candace Friesen as personal representative of the Estate of Ladell

Friesen.

The Court interprets the Plaintiffs' third amended complaint as being consistent with this determination as to Abigail Friesen. Abigail is not a named Plaintiff, and in the "Seventh Cause of Action" all claims related to Abigail are expressly brought on her behalf by Candace, as required.

**B. As a matter of law, Abigail, Stan, and Lois Friesen are entitled to recover wrongful death damages.**

Ace Doran argues that Abigail, Stan, and Lois Friesen's claims should be dismissed because they are not entitled to wrongful death damages, as they are not Ladell Friesen's "heirs."

Once again, Montana Code provides that: "When injuries to and the death of one person are caused by the wrongful act or neglect of another, the personal representative of the decedent's estate may maintain an action for damages against the person causing the death . . . ." MCA § 27-1-513. "In every action under 27-1-513, such damages may be given as under all the circumstances of the case may be just." MCA § 27-1-323. The Montana Supreme Court has held that loss of consortium is an example of "just" damages available in wrongful death actions. *Payne v. Eighth Judicial Dist. Court*, 60 P.3d 469 (Mont. 2002).

Ace Doran argues that only "heirs" of the decedent are entitled to wrongful

death damages based on two lines from Montana Supreme Court decisions. In *Renville v. Fredrickson* the court states: "The personal representative holds the proceeds of any damage award for the heirs of the decedent and the award does not become part of the decedent's estate." 101 P.3d 773, 777 (Mont. 2004). And in *Hern v. Safeco Insurance Company of Illinois*, the court states:

> Generally, damages under a wrongful death claim will include loss of consortium by a spouse, loss of comfort and society of the decedent suffered by the surviving heirs, and the reasonable value of the contributions in money that the decedent would reasonably have made for the support, education, training and care of the heirs had she lived.

125 P.3d 597, 604-05 (Mont. 2005). Ace Doran then artfully navigates Montana law to establish that since Candace is entitled to Ladell's entire estate, she is his sole "heir," thus concluding that only Candace may recover wrongful death damages.

Ace Doran's argument is both unconvincing and inconsistent with existing precedent.

Critically, Ace Doran fails to square its argument with the Montana Supreme Court's decision in *Johnson v. Marias River Elec. Co-op., Inc.,* 687 P.2d 668 (Mont. 1984). In *Johnson*, the court held that "the issue of a decedent who is survived by his spouse may maintain an action for damages under section 27-1-

513." *Id.* at 669. While the precise text of MCA 27-1-513 has been changed since *Johnson*, those changes relate to who may bring the single suit (formerly, either the heirs or the personal representative was permitted to do so), and in no way alters or affects the holding in *Johnson*. *Hern* and *Renville* do not explicitly or implicitly overturn *Johnson*, and Ace Doran does not present any convincing evidence as to why the Court should deviate from the precedent set forth in that case.

Additionally, Ace Doran's reliance on the lines from *Hern* and *Renville* is misplaced. Those cases address the issue of multiple lawsuits brought regarding a single death and reaffirm the principles that only one lawsuit may be filed in such a situation, and that the personal representative is the only party permitted to file such a suit. In neither case is the court faced with the question of who is entitled to recover wrongful death damages in a suit properly brought by the personal representative. Thus, the statements relied upon so heavily by Ace Doran constitute *obiter dicta*, and the Court declines to utilize them as a basis for overturning the Supreme Court's holding in *Johnson*. Furthermore, the fact that the Court has never expressly addressed limiting wrongful death damages to "heirs" as that term is strictly and narrowly construed by Ace Doran suggests that the court employed the term in a more colloquial fashion, rather than the precise

and exacting manner in which Ace Doran interprets it.

Following the example set in *Johnson*, the Court "will recognize the historical right of the issue of a decedent to join with their surviving parent to recover damages in a single wrongful death action" until instructed to do otherwise by the legislature or the Montana Supreme Court. 687 P.2d at 671.

Ace Doran's misplaced emphasis on the language of *Renville* and *Hern* is also fatal to its argument that Stan and Lois Friesen may not recover wrongful death damages. This Court addressed an identical argument in *Adams v. United States*, and stated:

> The U.S. also contends that the parents should be dismissed from the claim because, pursuant to *Hern*, "the personal representative holds any recovery from a wrongful death action for the heirs of the decedent." Applying intestacy statutes to determine Jay's "heirs," Jay's surviving spouse Kathleen should receive the entire estate. Therefore, the U.S. contends, because Kathleen would receive all proceeds from the wrongful death claim, Jay's parents and siblings may not recover any damages in this action. While the U.S. correctly identified Jay Allen's intestate heirs, these statutes would apply, if at all, to survival damages awarded to Jay's estate. In light of the Montana Supreme Court's recognition that parents may be compensated for loss of consortium of their adult children, the intestacy laws seem inapplicable to this motion. Wrongful death claims belong to the survivors while survival claims belong to the estate.

669 F. Supp. 2d 1203, 1208 n.1 (D. Mont. 2009). The Court reaffirms its stance on

this issue, which supports the conclusion that Abigail, Stan, and Lois Friesen are all entitled to recover wrongful death damages.

**C. Plaintiffs have not offered sufficient evidence of the relationship between Ladell Friesen and his parents, Lois and Stan Friesen, to survive the motion for partial summary judgment on their loss of consortium claim.**

In 2005, the Montana Supreme Court established that parents may recover for loss of consortium related to the death of their adult child. *Hern v. Safeco Ins. Co. of Illinois*, 125 P.3d 597, 608 (Mont. 2005). The court recognized that the "bond between parents and an adult child, and the loss experienced by parents at the death of their child, may be of such quality as to warrant recovery by the parents for loss of consortium." *Id.* However, the court set a high bar for parents to meet in order to recover such damages: there must be "significant evidence of an extraordinarily close and interdependent relationship" between the parents and the adult child. *Id.* "If sufficient evidence of such a quality relationship existed in the court's view, it is then the jury's responsibility to determine whether such a relationship actually existed, and, if so, whether it warranted recovery under a loss of consortium claim." *Id.* The court did not express a "hard and fast" rule for courts to follow when evaluating such claims, but it did adopt the analysis that this Court used in *Bear Medicine v. United States*. *Hern*, taken with *Bear Medicine,* 192 F.Supp.2d 1053 (D. Mont 2002), and *Adams v. United States*, 669 F.Supp.2d

1203 (D. Mont. 2009), presents an analytical framework for courts to utilize when determining whether evidence of an extraordinarily close and interdependent relationship exists.

In *Bear Medicine*, 33-year old Leland Kicking Woman was hit and severely injured by a falling tree. 192 F.Supp.2d at 1058-1059. Leland was paralyzed and died nine months later. *Id.* at 1056. Leland was survived by his mother and father, Molly and George Kicking Woman, who were 80 and 90 years old, respectively. *Id.* at 1059. Testimony by Leland's family members revealed that both George and Molly depended on Leland for physical, social, emotional, financial, and spiritual support. *Id.* at 1060. Leland ran the family ranch and lease holdings. *Id.* at 1065. George had trained Leland to take over his role as a spiritual leader in the tribe; specifically, George was holder of the "Thunder Pipe Bundle," which is approximately 400 years old and is entrusted to a role model, spiritual guide, and advisor to tribe members. *Id.* at 1062. The Court determined that George and Molly Kicking Woman were entitled to recover for their loss of consortium claim. *Id.* at 1068.

The *Hern* court found that the personal representative and the mother of Becky Hern, a deceased adult, failed to prove that an exceptional relationship existed between Becky and her mother to recover damages for loss of consortium.

125 P.3d at 608. The court distinguished the facts in *Hern* from those in *Bear Medicine* on two grounds. First, Becky "did not contribute to the financial support of her parents, nor did she manage their property or holdings." *Id.* at 609. Second, Becky did not have a special role akin to the spiritual leadership role Leland played in his tribe, which was handed down to him by his father. *Id.*

Judge Donald W. Molloy addressed this issue most recently in *Adams v. United States*. In *Adams*, Jay Allen, the adult child of John and Diana Allen, died of cardiac arrest. 669 F.Supp.2d 1203, 1205 (D. Mont 2009). John and Diana sought damages for loss of consortium, and the United States moved for partial summary judgment as to the sufficiency of evidence to support such a claim. The Court ultimately denied the motion for summary judgment, holding that as a matter of law, there was "sufficient evidence of an extraordinarily close and interdependent relationship between Jay and his parents," and that "[p]ursuant to *Hern*, a fact finder must determine at trial whether the close relationship actually existed to warrant the loss of consortium claim." *Id.* at 1210.

The *Allen* Court utilized the *Bear Medicine* standard to reach its decision. As to financial dependence, although "Jay's parents were not exclusively dependent upon their son financially, Jay contributed to their financial support by managing their cattle and by maintaining their property." *Id.* at 1209-1210. The

Court also found that Jay held a special role in his tribe akin to Leland's spiritual leadership role:

> John [Jay's father] is a spiritual leader of the Assiniboine, and he has been labeled a "medicine man." John Allen, like his grandfathers, put on Sun Dances, which are large ceremonies that involve fasting, dancing, and performing sacrifices. John Allen trained Jay to carry on these ceremonies, which had to be performed exactly the same each time. While each of John's sons participated in the Sun Dances, only Jay demonstrated the ability to be strong minded, humble, and laid-back as required in these traditional ceremonies. Since Jay's death, John must look for the right person with the appropriate personal characteristics to carry on the tradition of the Sun Dance. . . . John also took a year off from putting on the Sun Dance the year after Jay died because he could not "mentally and physically" put his heart into the work.

*Id.* at 1209 (internal citations omitted).

The loss of a child, at any age, is devastating, and evaluating the strength of intensely personal relationships is a difficult proposition. Thankfully, the *Bear Medicine* standard, which the Court applies in order to determine if "significant evidence of an extraordinarily close and interdependent relationship" exists, focuses on two relatively objective questions: (1) did the decedent contribute to the financial support of his or her parents, and/or manage their property or holdings; and (2) did the decedent hold a "unique role" similar to Leland Kicking Woman's spiritual leadership role. This is a high standard, as parents' recovery for

loss of consortium for the death of their adult child is the exception and not the rule, and it must be applied rigorously, lest the exception subsume the rule.

The evidence submitted by the Plaintiffs makes it clear that the love and connection between Ladell Friesen and his parents was marrow-deep. That evidence, however, does not clear the high bar set by *Hern* and *Bear Medicine*.

It is undisputed that Ladell did not contribute to the financial support of his parents nor manage their property at the time of his death. The analysis of the first prong of *Bear Medicine* effectively ends there. All of Plaintiffs' evidence points to an intention to financially support his parents going forward, but *Bear Medicine* cannot be stretched to cover plans for future financial support, no matter how sincere or well-intentioned those plans may be. Furthermore, while he did start a new business with his father as a partner, even if Ladell had survived, the success of such a fledgling enterprise is far from certain. Furthermore, the partnership is a business enterprise where each partner played a role. Serving as business partners does not constitute the "financial support" required for Ladell's parents to recover for loss of consortium.

Plaintiffs present evidence of the "extraordinarily close" and "special and unique" relationship between Ladell and his parents, but they do not appear to assert, and the Court does not find, that Ladell had a "unique role" similar to

Leland Kicking Woman's spiritual leadership. While Christianity played a role in Ladell's life, religiosity alone falls short of satisfying *Bear Medicine's* exacting standard.

Plaintiffs raise the concern that if the Court hews too closely to the facts in *Bear Medicine* in evaluating claims for loss of consortium damages for the wrongful death of an adult child, presumably on the issue of decedent's "unique role," that only Native Americans would be able to recover such damages. (Doc. 54 at 12.) While both *Adams* and *Bear Medicine* involved Native American families, recovery is certainly not limited to Native American parents. Leland Kicking Woman and Jay Allen were entrusted with "unique roles" in the form of leadership responsibilities within the wider community, and were trained to assume those roles by their fathers. These roles were spiritual in nature, and perhaps most importantly, they represented a nexus between the decedent's family and the greater community. Analogous roles certainly exist outside of Native American culture, but the Court will not hypothesize or speculate as to what those roles may be. An "extraordinarily close relationship," such as that enjoyed by the Friesens prior to Ladell's death, however, does not constitute the "unique role" envisioned by the *Hern*, *Adams*, and *Bear Medicine* courts.

As a matter of law, insufficient evidence exists for Plaintiffs to establish

15

either requirement first articulated by *Bear Medicine* and adopted by the Montana Supreme Court in *Hern*. Accordingly, Lois and Stan Friesen are precluded from recovering loss of consortium damages related to the wrongful death of their son Ladell Friesen.

The Court will dismiss Stan and Lois Friesen's individual claims, and any loss of consortium claim brought on their behalf by Candace Friesen as personal representative. In the third amended complaint, Stan and Lois seek recovery for "grief, sorrow, mental anguish and anxiety that they suffered as a result of their son's death." (Doc. 76 at 27.) This claim has not been addressed in the briefing on the motions now before the Court, but it too will be dismissed insofar as it is not brought by Candace on behalf of Stan and Lois.

### III. MOTION TO STRIKE

Defendant Ace Doran filed a motion to strike inadmissible evidence. (Doc. 71.) Specifically, Ace Doran contests that Plaintiffs' statement of genuine issues (Doc. 55), as well as significant portions of the affidavits of Lois Friesen (Doc. 55-20), Stan Friesen (Doc. 55-1), Rochelle Plett (Doc. 55-26), Andrew Plett (Doc. 55-27), and Brian Bute (Doc. 55-24) contain inadmissible hearsay, improper opinion testimony, and testimony that lacks personal knowledge. Plaintiffs object to the motion. (Doc. 79.)

The evidence at issue was proffered as part of Plaintiffs' response to Ace Doran's motion for summary judgment. Specifically, in Plaintiffs' words, "the affidavits Ace Doran finds objectionable go to the issue of the relationship between Stan and Lois Friesen as parents and their son, Ladell Friesen. This is the central issue in deciding whether or not Stan and Lois may recover for loss of consortium as a result of the death of their son." (Doc. 79 at 3.) Ace Doran makes numerous specific objections, and requests that the Court strike the evidence from the record and not consider it in its summary judgment determination. Plaintiffs respond that the affiants had personal knowledge, and that several hearsay exceptions render the evidence admissible.

The Court read and considered the disputed evidence, mindful of its ability to "separate the wheat from the chaff." Looking at all of the Plaintiffs' evidence, including that which Ace Doran moves to strike, Plaintiffs have not met the standard for recovery. Accordingly, the Court need not address the motion to strike, and will deny it as moot.

## IV. Conclusion

IT IS ORDERED that Defendant Ace Doran Hauling and Rigging Co.'s motion for partial summary judgment on Abigail Friesen, Stan Friesen, and Lois Friesen's claims (Doc. 38) is GRANTED in part, and DENIED in part as follows:

(1) Abigail, Stan, and Lois Friesen do not have standing to file a wrongful death claim based on the death of Ladell Friesen. Their claims must be brought by and through Candace Friesen, the personal representative of the Estate of Ladell Friesen. Accordingly, Stan Friesen and Lois Friesen are DISMISSED as parties to this litigation. Abigail Friesen's claim has been properly brought before the Court by Candace Friesen.

(2) Montana law does not preclude Abigail, Stan, and Lois Friesen from recovering wrongful death damages through a wrongful death claim brought by Candace Friesen, the personal representative of the Estate of Ladell Friesen.

(3) The Court finds insufficient evidence of an "extraordinarily close and interdependent relationship" between Lois and Stan Friesen and their adult son as that term has been elucidated in *Bear Medicine*, *Hern*, and *Adams*. Thus, as a matter of law, Stan and Lois Friesen are not entitled to recover damages for loss of consortium due to the wrongful death of their son Ladell.

Accordingly, IT IS ORDERED that the caption in this matter shall be amended to identify the sole Plaintiff as follows: "CANDACE FRIESEN, Individually and as Representative of the Estate of Ladell Friesen and as Next Friend of her Minor Daughter Abigail Ladell Friesen."

IT IS FURTHER ORDERED that Defendant Ace Doran's motion to strike

inadmissible evidence (Doc. 71) is DENIED.

Dated this 8th day of November, 2013.

Dana L. Christensen, Chief District Judge
United States District Court