IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CANDACE FRIESEN, Individually and as Representative of the Estate of Ladell Friesen and as Next Friend of her Minor Daughter Abigail Ladell Friesen;<br><br>Plaintiff,<br><br>vs.<br><br>ACE DORAN HAULING & RIGGING, INC.; and DOES 1-25,<br><br>Defendants. | CV 12–134–M–DLC<br><br>ORDER |

This order resolves three interrelated motions in this case: (1) Defendants Ace Doran Brokerage Co., Dan Hamm Leasing Company, and ADCO Realty, Inc.'s ("Movants") motion to dismiss for lack of personal jurisdiction[1] (Doc. 57.); (2) Plaintiff's[2] motion for leave to file fourth amended complaint (Doc. 106); and

---

[1] This motion was also filed by several former Defendants in this case, including Daniel Hamm Dryage Company, DTR of Cincinnati, Inc., RADCO Enterprises, Inc., Masterfleet Systems USA, Inc., and Doran Holding Company Ltd. The Court has since dismissed these parties pursuant to the Plaintiff's motion. (Doc. 113.)

[2] This motion was filed by Candace Friesen, Stan Friesen, and Lois Friesen. However, the Court dismissed Stan and Lois Friesen as parties to this action in a contemporaneously filed order. Accordingly, this order will recognize and refer to a single plaintiff, Candace Friesen, personal representative of the Estate of Ladell Friesen.

1

(3) Plaintiff's request for a status conference (Doc. 109).

For the reasons articulated below, Movants' motion to dismiss for lack of personal jurisdiction will be granted in part and denied in part, Plaintiff's motion for leave to file her fourth amended complaint will be granted, and Plaintiff's request for a status conference will be granted.

## I. FACTS

This matter arises out of a motor vehicle accident that occurred on U.S. Route 2 in Montana on or about February 22, 2011. Ladell Friesen died as a result of that accident. At the time of his death, Ladell Friesen was married to Candace Friesen, who was also in the vehicle, and who was pregnant with their only child, Abigail Friesen. Candace Friesen is the personal representative of Ladell Friesen's estate.

In her third amended complaint, Plaintiff brought claims against a multitude of defendants. The Court dismissed many of these Defendants pursuant to Plaintiff's motions. Currently, Ace Doran Hauling & Rigging Co. ("Ace Doran"), Ace Doran Brokerage Co., Daniel Hamm Leasing Company, and ADCO Realty, Inc. remain as Defendants. Ace Doran faces claims of negligence; negligence per se; gross negligence; and negligent hiring, supervision, and retention. Plaintiff's tenth cause of action alleges joint enterprise, alter ego, and joint and several

liability against all four remaining Defendants. On June 5, 2013, Movants filed a motion to dismiss for lack of personal jurisdiction, which Plaintiff opposes.

On September 4, 2013, Plaintiff filed a stipulated request for settlement conference. (Doc. 88.) On September 9, 2013, the Court issued an order referring the case to United States Magistrate Judge Jeremiah Lynch to conduct a settlement conference. (Doc. 92.) Judge Lynch issued an order scheduling a telephonic conference to be held on September 11, 2013. During the September 11 telephonic conference, Judge Lynch set a settlement conference for October 3, 2013. On or about September 17, 2013, Bennett Motor Express, LLC, "the largest of seven operating companies within . . . Bennett International Group, LLC," (Doc. 107-1 at 1), issued a public announcement that it had completed the asset purchase of Ace Doran. Plaintiff brought the new information regarding the asset sale to the Court's attention by asking Judge Lynch to cancel the settlement conference scheduled for October 3, 2013, which he did. On October 4, 2013, Plaintiff filed a motion for leave to file fourth amended complaint (Doc. 106), and a brief to support the motion (Doc. 107). Plaintiff states, "discovery for the purposes of fully understanding the asset sale to Ace Doran LLC and Bennett Motor Express, LLC and compliance with the Federal or Montana Fraudulent Transfer Ace will be incomplete without Ace Doran LLC, Bennett Motor Express, LLC or its owner

3

Bennett International Group, LLC in this case." (Doc. 107 at 6). Ace Doran opposes Plaintiff's motion. (Doc. 112.) On October 8, 2013, Plaintiff filed a request for status conference to discuss developments arising out of Ace Doran's asset sale. (Doc. 109.)

## II. DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Court's jurisdiction over this matter is based on diversity of citizenship under 28 U.S.C. § 1332. In an action based on diversity, the state and federal jurisdictional limits are coextensive. *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1241 (9th Cir 1984). Plaintiffs bear the burden of proving that the court has personal jurisdiction. *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 379 (9th Cir. 1990). Where, as here, the court "decides the jurisdictional issue based on affidavits and written discovery materials, Plaintiffs only need to make a prima facie showing of jurisdiction to defeat the motion to dismiss." *Allan G. Holmes, Inc. v. Mraz*, 2006 WL 2506044 at *2 (D. Mont.) (citing *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987)). "Plaintiffs' uncontroverted factual allegations are presumed to be true, and factual conflicts are resolved in Plaintiffs' favor." *Id.* (citing *Harris Rutsky & Co. Ins. Serv. Inc. v. Bell & Clements, Ltd.,* 328 F.3d 1122, 1129 (9th Cir. 2003)).

4

In order to establish this Court's jurisdiction, Plaintiff must show that each of the nonresident defendants fall within the scope of Montana's long arm statute, Rule 4B, M.R.Civ.P., and that exercise of personal jurisdiction meets the federal constitutional principles of due process. *Haisten v. Grass Valley Medical Reimbursement Fund*, 784 F.2d 1392, 1396 (9th Cir. 1986). Despite the Defendants' assertion to the contrary (Doc. 84 at 5), the "Montana Supreme Court has interpreted Rule 4B as permitting the exercise of personal jurisdiction to the maximum extent permitted by federal due process." *Holmes*, 2006 WL 2506044 at *2 (citing *Davis v. American Family Mutual Ins. Co.*, 861 F.2d 1159, 1161 (9th Cir. 1988) ("The Montana Supreme Court has interpreted the Montana long-arm statute to permit the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by due process")) *See also, Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986) ("The Montana Supreme Court . . . supported its conclusion by noting a 'prevailing trend toward expanding the permissible scope of state jurisdiction over the person of nonresident defendants,' and by noting that the assertion of jurisdiction complied with federal due process" (quoting *Prentice Lumber Co. v. Spahn*, 474 P.2d 141, 145 (Mont. 1970))); *State of North Dakota v. Newberger*, 613 P.2d 1002, 1004 (Mont. 1980) (The court states, "We have also recognized that there is a prevailing

5

trend toward expanding the permissible scope of state jurisdiction to the fullest extent possible," and proceeds to apply federal due process "minimum contacts" analysis alone to determine that the Montana district court had jurisdiction over the Appellant). Although Montana's long arm statute (Rule 4(b), M.R.Civ.P) has been amended since the rulings in some of the above-cited cases, those amendments in no way affect the precedent established by these cases that Montana's long arm statute is coextensive with the limitations of federal due process. "Where the state and federal limits are coextensive, the jurisdictional analyses under state law and federal due process are the same." *Holms*, 2006 WL 2506044 at *2 (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)).

   Due process requires "that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Specific personal jurisdiction "exists when a defendant has sufficient minimum contacts with the forum state to warrant the exercise of jurisdiction." *Holms*, 2006 WL 2506044 at *3. Movants argue that this Court does not have specific personal jurisdiction because they have no direct

contact with the State of Montana, including the types of contacts enumerated in Montana's long arm statute (Rule 4(b)(1), M.R.Civ.P.), and because the Plaintiff has not satisfied the three prong due process analysis that the Ninth Circuit established in *Data Disc, Inc. v. Sys. Tech. Assocs. Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).

It is undisputed that: (1) the Movants do not conduct substantial or systematic and continuous activities in Montana, nor have any direct contact with the state; and (2) that Ace Doran does not contest personal jurisdiction. Plaintiff's argument is that for the purposes of personal jurisdiction, Ace Doran's undisputed contacts with the State of Montana should be imputed to the Movants using the "alter ego" and/or "agency" exception to the well-established rule that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parents for jurisdictional purposes, *Harris Rutsky*, 328 F.3d 1134-35 (9th Cir. 2003). Since the alter ego exception is dispositive of the motion to dismiss, the Court will limit its analysis to that exception, and will not reach the agency exception.

"To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of

7

the two entities no longer exist, and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* at 1134 (citing *Doe, I v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir 2001)) (internal quotations omitted). "The plaintiff must show that the parent exercises such control over the subsidiary so as to render the latter the mere instrumentality of the former." *Id.* at 1135.

Movants raise two threshold issues on the applicability of the alter ego exception to the instant case that must be resolved if the Court is to reach Plaintiff's argument that the exception grants this Court jurisdiction over the Movants.

Movants first take issue with Plaintiff's assertion that "there is no reason" that the alter ego exception is not "equally applicable when it is the parent who establishes minimum contacts for jurisdiction." Defendants are correct that Plaintiffs did not support this assertion with any legal citation; in the cases Plaintiff cites to support her alter ego argument, the courts impute the contacts of the subsidiaries to the parents. However, the Court does not believe that just because it has traditionally been applied from the subsidiary to parent, the alter ego exception does not permit the imputation of contacts in the opposite direction in certain circumstances. The Court was unable to find any case law prohibiting such an application of this exception.

At the heart of the alter ego exception is the concept that the legal autonomy of the corporate form should not be maintained "if the parent and subsidiary are not really separate entities," and failure to acknowledge that truth would result in fraud or injustice. *Unocal*, 248 F.3d st 925. In certain situations, as in the instant case, the question of which company is the parent and which company is the subsidiary is merely a matter of semantics.

In the absence of contrary precedent, and given both the facts in the instant case as they are described below and the logic underlying this exception, the Court agrees with the United States District for the Northern District of California that, "[a]lthough *Harris-Rutsky* involved a parent company and its subsidiary, we see no reason to limit the doctrine to that situation," *Oncology Therapeutics Network Connection v. Virginia Hematology Oncology PLLC*, 2006 WL 334532 at *15 (N.D. Cal. Feb. 10, 2006), and will apply the alter ego exception to determine if Ace Doran's contacts may properly be imputed to Movants.

The second threshold issue Movants raise is that since a parent-subsidiary relationship must exist for either the agency or alter ego exception to apply, neither exception may be applied to ADCO because it is not a subsidiary of Ace Doran Hauling & Rigging (Doc. 63). The Court agrees that the alter ego exception presupposes a parent-subsidiary relationship, and will dismiss ADCO without

9

prejudice.

In applying the alter ego analysis to determine if Ace Doran's contacts with the State of Montana may be imputed to Dan Hamm Leasing Company and Ace Doran Brokerage Co., the Court must first determine if there is such unity of interest and ownership that the separate personalities of Ace Doran and each of the Movants no longer exists. The Ninth Circuit has articulated certain facts that are insufficient to show a unity of ownership such that regarding Ace Doran and Movants as separate entities would result in fraud or injustice. *See, e.g., Unocal*, 248 F.3d at 926, 928 ("references in the parent's annual reports to subsidiaries . . . do not establish the existence of an alter ego;" "appropriate parental involvement includes monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures;" "[i]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary"); *Harris Rutsky*, 328 F.3d at 1135 ("100% control through stock ownership does not by itself make a subsidiary the alter ego of the parent," nor does the fact that the companies are run by the same directors or share an office and staff).

The entanglement between Ace Doran and Movants demonstrates unity of interest of ownership to the extent that Movants are mere instrumentalities of Ace

Doran. The materials before the Court indicate that the Movants appear to exist solely to service Ace Doran, and serve only to compartmentalize the assets and liabilities associated with the running of Ace Doran's business.

Ace Doran Brokerage arranged for hauling of loads that cannot be hauled by Ace Doran Hauling & Rigging contract drivers. The revenue Ace Doran Brokerage generates is deposited into Ace Doran's accounts. Ace Doran and Ace Doran Brokerage share an office. Daniel Hamm Leasing owns trailers that it rents to Ace Doran, which in turn rents the trailers to its drivers. Ace Doran is the sole customer of Daniel Hamm Leasing. Daniel Hamm Leasing's offices are in Ace Doran's headquarters. Additionally, there are no records of Daniel Hamm Leasing having any shareholder, director, or officer meetings as required by Ohio law.

Movants are wholly dependent on Ace Doran for their income and business. Ace Doran and Movants: (1) have filed consolidated tax returns since at least 2008; (2) have the same officers and directors; (3) are managed by the same president, Dan Doran; and (4) hold joint quarterly and annual meetings of the shareholders and directors. In May 2012, Movants pledged 100% of their assets to secure a line of credit for Ace Doran, with no independent financial benefit conferred on any Movant in exchange. Movants are precluded from drawing on this line of credit. Movants also filed corporate resolutions related to the pledge of

their assets stating that their economic success is "linked to and interdependent with the economic success" of Ace Doran.

In light of this evidence, the Court finds that the plaintiff has satisfied her burden and made a prima facie showing of jurisdiction sufficient to defeat the motion to dismiss. Plaintiff has demonstrated that "Movants and Ace Doran are all one family business, run out of the same building, with commingled funds, incestuous non arms length leases, common bookkeeping and accounting, identical officers and directors, all providing an essential element of Ace Doran's trucking enterprise." (Doc. 77 at 10)

Failure to disregard these separate entities would result in injustice. On the eve of a settlement conference in this case Ace Doran sold and transferred virtually all of its assets to entities outside of Montana.[3] If Movants were not parties to this litigation and a judgment was entered against Ace Doran, Plaintiff could very likely be precluded from full recovery. Movants correctly state that nothing will prevent Plaintiffs from taking any unsatisfied portion of a judgment they receive against Ace Doran to an Ohio court to pierce the corporate veil, but in the same breath, they claim that piercing the corporate veil is an improper remedy

---

[3] It appears this asset transfer and sale was done without the knowledge of Ace Doran's Montana counsel. (Doc. 107 at 3.)

under Ohio law. (Doc. 84 at 13, n. 2) It is not this Court's province to apply or interpret Ohio law to determine if the Plaintiffs might succeed in piercing the corporate veil, and it will not hinge Plaintiff's chance at recovery on such a tenuous proposition. Given the dubious prospect of Plaintiff's full recovery if the Court did not impute Ace Doran's contacts to Movants, the Court finds that failure to disregard these separate entities would result in an unacceptably high possibility of injustice.

Thus, the Court finds that it has personal jurisdiction over Ace Doran Brokerage Co. and Daniel Hamm Leasing, obtained through Ace Doran's undisputed contacts with the State of Montana.

### III. PLAINTIFF'S MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

"A party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is "to be applied with extreme liberality." *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (quoting *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir.2003)). In assessing whether leave to amend is proper, courts consider several factors including "undue delay, bad faith or dilatory motive on

13

the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff moves for leave to file a fourth amended complaint, which adds Ace Doran Hauling & Rigging, LLC, Bennett Motor Express, LLC, and Bennett International Group, LLC as plaintiffs, and brings claims that Ace Doran's recent asset sale is a sham, and violates the Montana and Federal Fraudulent Transaction Act. (Doc 106). Defendants object to the motion on several grounds: (1) because the parties Plaintiff seeks to add are unrelated and not proper parties to this case, Plaintiff's amendment would only serve to delay the case; (2) the Plaintiff will not be prejudiced is the Court denies leave to amend; (3) Defendants will be prejudiced if the Court grants leave to amend; and (4) Plaintiff's motion should be denied as futile, since this Court does not appear to have personal jurisdiction over any of the parties Plaintiff seeks to add. The Court does not find any of the Defendant's objections compelling in the face of its mandate to grant leave liberally.

Ace Doran's asset sale occurred on or about September 17, 2013, shortly before the October 13 settlement conference scheduled with Judge Lynch. Plaintiff

cancelled the conference and filed this motion in a timely manner after learning of the sale. At this time, to the Court's knowledge, no discovery has been conducted relating to the asset sale, and the Court will not conclude that the parties Plaintiff seeks to add are not proper and unrelated. After discovery has been conducted, the Court will entertain Defendants' motions on this subject, but it will not deny leave to file an amended complaint on these grounds.

While the Court recognizes that the amendment will likely cause dely, it does not believe that delay to be undue in light of the Defendant's recent conduct. Defendant made the decision to conduct an asset sale in the midst of ongoing litigation; such an action precludes Defendant from credibly arguing that delay in the litigation caused by that sale is undue. Surely, Defendant cannot have imagined that an asset sale would not trigger a response akin to Plaintiff's motion to amend.

Ace Doran argues that Plaintiff will not be prejudiced if the Court denies her motion to amend. The Court declines to address this immaterial argument. As stated above, the proper inquiry is whether the amendment would result in "undue prejudice to the opposing party." Ace Doran does not elaborate on its claim that addition of the proposed parties will prejudice it, and the Court finds no basis for such a claim.

Finally, Ace Doran argues that amendment of the complaint would be futile due to lack of personal jurisdiction over the proposed Defendants. A proposed amendment "is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc*., 845 F.2d 209, 214 (9th Cir. 1988). All claims in Plaintiff's fourth amended complaint are well-pled, and there are certainly facts that can be proven that would make all claims valid against the proposed Defendants. While Ace Doran raises legitimate questions of fact, they are just that: questions of fact, which may be raised and addressed in due course at the appropriate time and in the appropriate manner during this litigation. Ace Doran's futility argument is particularly unconvincing in the face of this Court's determination that it has personal jurisdiction over several Defendants who articulated similar arguments to those made by Ace Doran in arguing futility here.

The suspicions underlying Plaintiff's motion for leave to amend are not unfounded. The Court will comply with its statutory mandate to grant leave to file an amended complaint freely in the face of this asset sale.

### IV. PLAINTIFF'S MOTION FOR STATUS CONFERENCE

Plaintiffs request a status conference to discuss "recent developments arising out of Defendant Ace Doran's asset sale, pleading amendment due to the asset sale, discovery necessitated by that asset sale, and the cancellation of the (10/03/2013) scheduled settlement conference with Judge Lynch as a result of the same asset sale." (Doc. 109 at 2.) Defendant Ace Doran neither stipulates or objects to the request.

Despite the fact that the Court will grant Plaintiff's motion for leave to file a fourth amended complaint, a status conference is appropriate at this time, given the affect that this order and the contemporaneously filed order regarding several other motions in this will likely have on the deadlines in this litigation.

### V. CONCLUSION

IT IS ORDERED that:

(1) Defendants Ace Doran Brokerage Co, Dan Hamm Leasing Company, and ADCO Realty, Inc.'s motion to dismiss for lack of personal jurisdiction (Doc. 57) is GRANTED as to ADCO Realty, Inc., and DENIED as to Ace Doran Brokerage Co and Dan Hamm Leasing Company.

(2) Accordingly, ADCO Realty, Inc. is DISMISSED WITHOUT PREJUDICE.

(3) Plaintiffs' motion for leave to file fourth amended complaint and add

additional parties Ace Doran Hauling & Rigging LLC, Bennett Motor Express, LLC, and Bennett International Group, LLC (Doc. 106) is GRANTED.

(4) Plaintiffs' request for status conference (Doc. 109) is GRANTED.

(5) Counsel shall participate in a telephonic status conference set for **Friday, November 15, 2013 at 11:00 a.m.** Counsel will be advised of the conference line number at a later date, and shall be prepared to discuss the status of this case, and whether a new scheduling order needs to be issued.

Dated this 8th day of November, 2013.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court